IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF

| | | |
|---|---|---|
| **JEFFERY MUSSELMAN** | | **PLAINTIFF** |
| v. | No. 4:22-cv-01216-BRW | |
| **CHRISTINE WORMUTH, Secretary,** Department of the Army | | **DEFENDANT** |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE

1. Plaintiff was previously employed as a GS-13 Senior Unexploded Ordnance Supervisor at the Army's Remediation Response West Section of the Chemical, Biological, Radiological, Nuclear, High-Yield Explosives Command (CBRNE), CBRNE Analytical Remediation Activity (CARA), facility in Pine Bluff Arsenal, Arkansas.  DEX 1 (SF-50 showing disability retirement).

2. Until May of 2013 Plaintiff's supervisor was Marvin Hubanks, whose title was program manager.  DEX 2 (Pl. Dep. Tr.) at 37.

3. Dallys Talley, above Hubanks, was the Acting CARA director from January to July 2013, after which Chris Chesney became the director of CARA in July 2013.  DEX 2 (Pl. Dep. Tr.) at 39.

4. After Hubanks retired in May 2013, Dallys Talley temporarily placed plaintiff in Hubanks's program manager position while a new program manager could be found.  DEX 2 (Pl. Dep. Tr.) at 74-75.

5. In early 2014 Kevin Neal was hired as program manager to replace Hubanks.  *Id.*

6. Colonel Richard Schueneman (whom plaintiff also accuses of retaliation) was the Chief of Staff for CBRNE at Aberdeen Maryland; however, he was not in plaintiff's chain of command at any time. DEX 3 (Schueneman Decl.) at 49-50.

7. Between 2010 and 2012 plaintiff participated as a witness in support of two different co-workers' harassment complaints, one sexual and one racial. DEX 2, Pl. Dep. Tr. at 23-29, 43-53; DEX. 4, EEO formal complaint, Box.10, describing EEO prior protected activity in 2010 and 2012.

8. Plaintiff provided a statement in support of co-worker Mandy Moore during a (non-EEO) investigation by management in May 2010 when Moore alleged sexual harassment and sexual assault by Robert Broach, Sr. *Id* ; Pl. Dep. at 25-26.

9. Plaintiff does not know whether Moore ultimately filed an EEO complaint but does not think she did. Pl. Dep. Tr. at 28.

10. Plaintiff also testified in support of a second co-worker, Jodie Carr, in September 2012 at an EEO fact-finding conference which was initiated after Carr filed an EEO complaint alleging racial harassment occurring in October 2011 by Mr. Hubanks. DEX 4 ("Fact finding hearing was held at PBA in Sept 2012 when I made protected statements against the PM"); DEX 2 (Pl. Dep. Tr.) at 50 (So, it would've been mid-2012, I'm thinking is when the EEO fact-finding hearing for that happened").

11. Plaintiff acknowledged at his deposition that the last protected activity in either of those cases occurred in 2012 when he gave testimony at a fact-finding conference. DEX 2 (Pl. Dep. Tr.) at 50-52 ("Q. And then, 2012, you gave a statement to an EEO

factfinder?  A. Right….Q…Is that your involvement ... in Ms. Carr's EEO case? A. Yes.").

12. None of the individuals alleged to have retaliated against plaintiff--Dalys Talley, Christopher Chesney, or Colonel Richard Schueneman--were alleged perpetrators in the complaints described above.  DEX 2 (Pl. Dep. Tr.) at 26-29, 43-49.

13. Talley, Chesney and Schueneman were located at Aberdeen Proving Grounds in Maryland during the relevant period.  DEX 2 (Pl. Dep. Tr.) at 85; DEX 3.

14. Plaintiff does not have any evidence that Colonel Schueneman knew of his participation in Carr's EEO activity, rather it was "just a feeling."  DEX 2 (Pl. Dep. Tr.) at 67.

15. Further, plaintiff's only "evidence" that Schueneman knew about his participation in Mandy Moore's complaint in 2010 was based merely on Schueneman's position and nothing more tangible.  DEX 2 (Pl dep. Tr.) at 68-69.

16. In May 2013 when Hubanks retired, he left without providing a 2012-2013 evaluation for plaintiff.  DEX 2 (Pl. Dep. Tr.) at 37-38.

17. As a result, Hubanks was not around to rate plaintiff for evaluation period ending in June 2013.  *Id.*

18. Further, prior to his retirement Hubanks did not provide a separate "close-out" rating for plaintiff.  DEX 5 (FFC Tr.) at 147.

19. At his deposition Musselman testified that he would not have accepted an evaluation from Hubanks in any event. DEX 2 (Pl. Dep. Tr.) at 38.

20. As a result of the transition, plaintiff's rating was significantly delayed but was eventually completed in June 2014.  DEX 5 at 94-95; 145-146.

21. Another employee, Steven Tewhill, was in the same situation as Plaintiff in that Hubanks had also failed to take the steps necessary to rate Tewhill.  DEX 5 at 47.

22. The Army followed the same process in performing Tewhill's late evaluation as it did with plaintiff's.  DEX 5 (FFC Tr.) at 117-118.

23. Plaintiff was generally rated well on the evaluation, receiving a "2" overall grade equating to "excellence" (the highest grade was "1," which is similarly deemed as "excellence").  DEX 6.

24. In fact there are no negative comments on the evaluation.  *Id.*

25. Chesney, the senior rater, subsequently indicated they gave him a level 2 excellent evaluation instead of a level 1 because of some perceived problems that prevented him from obtaining the highest possible score, including: isolating himself at times and failing or refusing to sign a property book.  DEX 5 (FFC Tr.) at 142-146.

26. Plaintiff had previously been informally counseled during the rating period for failing to sign the property book. DEX 7.

27. Chesney and Tally also noted that in his self-evaluation plaintiff credited himself for actions that he had taken in a prior evaluation period or to their mind were not as significant as Musselman thought they were.  DEX 5 (FFC Tr.) at 107-113.

28. Further, in their view his accomplishments in the Florida and Redstone projects in their view were not as outstanding as plaintiff believed they were.  *Id.*

29. About six weeks prior to receiving the evaluation, Plaintiff's home was destroyed by a tornado on April 27 or 28, 2014. DEX 2 at 57.

30. Plaintiff submitted a request for administrative leave totaling 120 hours to his supervisor. DEX 8.

31. Because the 120 hours requested was not earned leave, the granting of the leave was discretionary. *Id.*; DEX 2 at 69 ("Q. … Are you aware of any Army rule or regulation that would say that you were entitled to the 120 hours of administrative leave?  A. No, there's none. Q. Okay. It is discretionary, is it not?  A. It is discretionary.")

32. Plaintiff's supervisors, including Christopher Chesney, supported the full grant of discretionary, unearned administrative leave but were required to send it to higher headquarters at Aberdeen, Maryland for approval. DEX 8 (indicating Chesney's recommendation to approve).

33. The decision-maker therefore was Colonel Richard Schueneman. *Id.*

34. Colonel Schueneman considered the request, consulted with his Human Resources section, as well as Colonel Schueneman's higher headquarters at Fort Bragg and ultimately decided to grant the request in part by providing plaintiff 40 hours of administrative leave rather than the entire 120 hours. DEX 3 at 50-53.

35. The Army was concerned about setting a precedent of granting more than 40 hours of unearned leave for personal hardship matters based upon potential future costs to the agency. *Id.* at 53.

36. Colonel Schueneman had no knowledge of plaintiff's prior protected activity in the sexual and racial harassment complaints. *Id.* at 50.

37. Ultimately, plaintiff appealed to the Commanding General of CBRNE who granted the original request in full. DEX 9.

38. Christopher Chesney also supported plaintiff's appeal to the Commanding General, as he had with the initial request. *Id.*

39. Plaintiff is not aware of whether he lost any pay as a result of the delay in the granting of the entire requested leave. DEX 2 at 62.

40. Plaintiff chose not to ask for advanced leave (leave which he did not currently have but would effectively borrow and pay back) because he "didn't like that option at all." DEX 2 at 64; DEX 8.

41. A year later Plaintiff retired on disability retirement in 2015 as a result of a medical condition, Post-Traumatic Syndrome ("PTSD"), which made him non-deployable (a requirement for the job). DEX 1; DEX 2 at 18-21.

          Respectfully submitted,

          Jonathan D. Ross
          United States Attorney
          Eastern District of Arkansas

          By: /s/ Richard M. Pence, Jr.
          Ark. Bar No. 69059
          Assistant U. S. Attorney
          Eastern District of Arkansas
          P.O. Box 1229
          Little Rock, AR   72203
          501-340-2600
          Richard.pence@usdoj.gov

## **CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing was sent *via* U.S. Mail and electronically on this 10th day of January, 2024, to the following:

Jeffery Scott Musselman
Plaintiff pro se
22 Cemetery Road
Vilonia, Arkansas   72173
Jeffmuss@icloud.com

/s/ Richard M. Pence, Jr.
Richard M. Pence, Jr.
Assistant U. S. Attorney
